UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOHN ARNOLD GUMPRECHT and
CAROL BURTON GUMPRECHT,

    Debtors,
_____/

ARTHUR KEELEY II and
LORI KEELEY,

    Plaintiffs,

v.

JOHN ARNOLD GUMPRECHT and
CAROL BURTON GUMPRECHT,

    Defendants.
_____/

Case No. 11-47982
Chapter 7
Hon. Walter Shapero

Adv. Pro. No. 11-05909

## OPINION GRANTING DEFENDANT SUMMARY JUDGMENT

### Background

The parties do not dispute the material facts. On December 14, 2006, Carol Gumprecht operated an uninsured 2003 Ford Explorer owned by her husband, John Gumprecht, on eastbound 37 Mile Road west of M-53 in Macomb County, Michigan. Robert Wilcox was another motorist on the roadway at the time, and purportedly witnessed what transpired. In his affidavit, he states that he was southbound on M-53, and personally made the following observation:

> I observed Ms. Gumprecht's vehicle traveling eastbound on 37 Mile Road, approaching the stop sign at a very high rate of speed, in excess of 55 miles per hour.

> I observed that her brake lights were not engaged.
>
> . . .
>
> Approximately only 20 yards from the stop sign, it appeared Ms. Gumprecht began engaging her brakes. However, she was traveling at such a high rate of speed, it appeared as though she would not be able to stop.
>
> I observed Ms. Gumprecht then disengage her brakes and take the turn at a reckless rate of speed, veering into oncoming traffic. I observed Ms. Gumprecht's very large SUV hit Mr. [Arthur] Keeley [II]'s small [1985] S-10 pickup.
>
> . . .
>
> From my observations, it appeared that Ms. Gumprecht's actions were in complete disregard of the safety of the drivers traveling on Van Dyke Avenue [M-53], which is a very busy roadway.

(Pls.' Answer to Defs.' Mot. Summ. J. & Pls.' Counter Mot. Summ. J. (Docket No. 61), Ex. A.) The police report of the crash indicates that Carol Gumprecht and Arthur Keeley were the only occupants of their vehicles at the time of the incident. (Br. Supp. Defs.' Mot. Summ. J. (Docket No. 53), Ex. C.) Both apparently sustained injuries; however, the extent of those injuries is not disclosed. (Br. Supp. Defs.' Mot. Summ. J. (Docket No. 53), Ex. C.) Apparently a state civil action between the parties ensued in 2009, resulting in Arthur Keeley obtaining a default judgment against both of the Gumprechts. None of the state court pleadings are before the Court.

On March 24, 2011, the Gumprechts filed their joint chapter 7 bankruptcy case, and received a discharge on June 28, 2011. Arthur and Lori Keeley (identified collectively as "Plaintiffs") timely filed this adversary proceeding seeking nondischargeability of the debt under § 523(a)(6). The Gumprechts and Plaintiffs filed their pending motions and cross-motions for summary judgment

2

(Docket Nos. 52 & 61) on January 12, 2012, and January 24, 2012, respectively. Subsequent to those filings, the proceeding against John Gumprecht was dismissed.

The lynchpin issue in the motions and cross-motions is the "willful" (i.e., "intent") issue, and the merit of Plaintiffs' argument in regard thereto, expressed as follows:

> While Plaintiffs do not have evidence of actual or specific intent, they do argue Defendant Carol Gumprecht had *inferred intent*. Mr. Robert Wilcox, who was witness to the . . . accident, stated in his affidavit that he observed Defendant Carol Gumprecht attempt to stop, but when it appeared that she would not be able to stop in time he observed Defendant Carol Gumprecht "disengage her brakes and take the turn at a reckless rate of speed." *(Exhibit A - Robert Wilcox Affidavit).* [sic] A **reasonable person** under the same or similar circumstances would have known that an accident is substantially certain when running a stop sign and attempting to turn into traffic at a high rate of speed. As a result, Defendant Carol Gumprecht had **inferred intent** when she intentionally ran the stop sign at a high rate of speed resulting in said accident and injuries to Plaintiff Mr. Keeley. Therefore, the "willful" prong of 11 U.S.C. § 523(a)(6) is satisfied.

(Pls.' Answer to Defs.' Mot. Summ. J. & Pls.' Counter Mot. Summ. J. (Docket No. 61) ¶ 6 (bold emphasis added).) Carol Gumprecht ("Defendant") does not agree with Plaintiffs, and argues the "reasonable person" standard should not be applied in a § 523(a)(6) context.

Plaintiffs based their initial argument almost entirely on the ruling in In re Adams, 147 B.R. 407 (Bankr. W.D. Mich. 1992), aff'd, 1993 U.S. Dist. LEXIS 16183, which, as the Court pointed out to Plaintiffs at the hearing, preceded the landmark § 523(a)(6) decision of Kawaauhau v. Geiger, 523 U.S. 57 (1998), and the subsequent case of Markowitz v. Campbell (In re Markowitz), 190 F.3d 455 (6th Cir. 1999). After the Court made Plaintiffs aware that the Geiger and Markowitz cases controlled, Plaintiffs for the first time alleged that Defendant was also under the influence of sixteen different medications at the time of the crash. Incident to Plaintiffs' new allegation, the Court

3

permitted them an opportunity to present additional evidence in support thereof and to make an argument thereon. The Court then took the matter under advisement, pending the timely filing of evidence supporting Plaintiffs' new claim.[1]

Plaintiffs timely filed a supplemental brief (Docket No. 98); one affidavit of a medical doctor attesting to the afore-identified sixteen different medications (Docket No. 99); medical records so indicating (Docket No. 100); and the transcripts of depositions of both Defendants (Docket Nos. 101 & 102). In their supplemental brief, Plaintiffs once again reiterate, "[A] plaintiff, as a minimum requirement under § 523(a)(6), must establish inferred intent. In determining whether intent should be inferred, the debtor's belief should be reviewed by an objective, or 'reasonable person,' standard considering the 'the totality of the circumstances.' Adams, 147 B.R. at 415; In re Greve, 97 B.R. 383, 387 (Bankr. S.D. Ohio 1989)." Plaintiffs claim that the totality of the circumstances here show that the "willful" and "malicious" elements of § 523(a)(6) are satisfied "when [Defendant] decided to drive under the influence of sixteen (16) medications, disregarded the stop sign at a busy intersection and decided to take her foot off the brake and turn into traffic at a high rate of speed instead of stopping[.]" (Pl.'s Supp. Br. 4.) On May 24, 2012, Defendant filed a short response to the brief and additional submissions relying once again on the Geiger decision. The question thus is whether either party is entitled to summary judgment.

---

[1] Notwithstanding that process, there is not before the Court a claim of nondischargeability under § 523(a)(9), which specifically deals with a debt for "personal injury caused by the debtor's operation of a motor vehicle . . . if such operation was unlawful because the debtor was intoxicated from using . . . a drug or another substance." Whether or not Plaintiff can successfully assert such a claim is for another day.

4

11-05909-wsd    Doc 104    Filed 07/27/12    Entered 07/27/12 17:16:19    Page 4 of 8

**Discussion**

Fed.R.Civ.P. 56(c) provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Kalamazoo River Study Group, 171 F.3d at 1068 (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 256).

Defendant's motion will be considered first. Plaintiffs reliance upon Adams is misplaced in light as noted of the subsequent rulings in Geiger and Markowitz, i.e.:

> Until 1999, the Sixth Circuit's standard for § 523(a)(6)'s "willful" requirement was rather lenient. As long as a debtor could be shown to have intentionally committed an act which led to an

5

>   injury, he would be found to have acted "willfully" under § 523(a)(6), regardless of whether or not he actually intended the injury. Perkins v. Scharffe, 817 F.2d 392, 394 (6th Cir. 1987). Perkins was overruled in 1998 by the U.S. Supreme Court case of [Geiger]. In Geiger, the Supreme Court held that only acts done with the intent to cause the actual injury will rise to the level of a "willful and malicious injury" as used in § 523(a)(6). Id. In light of the Supreme Court's ruling in Geiger, the Sixth Circuit amended its definition of "willful" as used in § 523(a)(6): We now hold that unless "*the actor desires* to cause consequences of his act, *or . . . believes* that the consequences are substantially certain to result from it," he has not committed a "willful and malicious injury" as defined under § 523(a)(6). [Markowitz,190 F.3d at 464.]

Stephens v. Morrison (In re Morrison), 450 B.R. 734, 749 (Bankr. W.D. Tenn. 2011) (emphasis added). Current law requires the establishment by Plaintiffs that "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing Markovitz, 190 F.3d at 464). Whether a "reasonable person would desire" or a "reasonable person would believe" is not the test, and, accordingly, the utilization of a "reasonable person" standard in a § 523(a)(6) analysis is misplaced. See, e.g., Bracciodieta v. Raccuglia (In re Raaccuglia), 2011 Bankr. LEXIS 5252, at *12 (Bankr. N.D. Ga. 2011); Grove v. Beaver (In re Beaver), 454 B.R. 184, 189-90 (Bankr. D.N.M. 2011); Wood v. Loader (In re Loader), 417 B.R. 604, 611 (Bankr. D. Idaho 2009). But see McCurdie v. Strozewski (In re Strozewski), 458 B.R. 397, 408 (Bankr. W.D. Mich. 2011) (Gregg, C.J.).

As for fact-patterns like that in this case, an abundance of post-Geiger case law is available. For example, in Tso v. Nevarez (In re Nevarez), 415 B.R. 540, 543 (Bankr. D.N.M. 2009), summary judgment was granted to a defendant facing two counts of "great bodily injury by vehicle resulting from reckless driving," because (1) "Plaintiff has presented no evidence that Defendant knew the

6

harm to Plaintiff was substantially certain to occur"; and (2) "[f]inding that the debt at issue is non-dischargeable based on an inference that the Defendant knew or should have known that his reckless driving would result in injury inappropriately expands the scope of non-dischargeability under 11 U.S.C. § 523(a)(6) to include acts of negligence under an objective, reasonable person standard[.]" Also, in Guthrie v. Williamson (In re Kokenge), 279 B.R. 541, 543-44 (Bankr. E.D. Tenn. 2002), summary judgment was granted to a defendant accused of injuring the plaintiffs in a crash occurring as a result of alleged drag-racing on a "winding mountain road ('with snow on the ground') at speeds in excess of ninety miles per hour." In Guthrie, 279 B.R. at 544, the court granted summary judgment, because "[t]here is not one shred of evidence . . . supporting the material point at issue - that the Debtor intended to (or believed it was 'substantially certain' that he would) injure the Plaintiffs by wrecking his car[.]" Further, in Grange Mutual Casualty Co. v. Chapman (In re Chapman), 228 B.R. 899, 910 (Bankr. N.D. Ohio 1998), the court, in fact, granted summary judgment to plaintiffs against a defendant convicted of felonious assault arising from his involvement in a traffic crash. The court explained, "Upon examining the admissible evidence, there is no doubt to the Court that the Debtor intended to cause injury to Ms. Pickens and/or her vehicle, or was substantially certain that some type of wrongful injury would result from his actions."[2]

As the Eighth Circuit explained in Geiger, 113 F.3d 848, 852 (8th Cir. 1997) (citation omitted), which the Supreme Court later affirmed in its decision,

> A person who deliberately and intentionally turns the wheel of an automobile to make a left-hand turn without looking up to see if traffic is coming the other way, an act very likely to lead to injury, however foolish or even reckless he or she may be, simply cannot

---

[2] See also Baker v. Simerson (In re Simerson), No. 08-21681, slip op. (Bankr. E.D. Mich. 2009) (ruling against a plaintiff in a trial under circumstances substantively similar to those in Nevarez and Guthrie and applying the same basic analysis).

7

> fairly be described as committing an intentional tort. We therefore think that the correct rule is that a judgment debt cannot be exempt from discharge in bankruptcy unless it is based on what the law has for generations called an intentional tort, a legal category that is based on "the consequences of an act rather than the act itself."

Given existing case law and Plaintiffs' sole reliance on <u>Adams</u> and the prohibited "reasonable person" standard, Plaintiffs' action cannot proceed. Not only is there no evidence on the record from which a reasonable fact-finder could find that Defendant harbored the requisite "actual intent" or "actual belief" needed to satisfy the "willful" element, Plaintiffs admit in their cross-motion that they, in fact, cannot present any such evidence. Seen, as it must be, in a light most favorable to Plaintiffs, the evidence (including consideration of the medication evidence, which might in one sense militate against the existence of that required intent) simply is not sufficient to meet the indicated heightened standard to establish conduct as "willful" under § 523(a)(6).

## **Conclusion**

Given that conclusion, Defendant's motion must be granted and Plaintiffs' cross-motion perforce denied. Defendant shall present an appropriate order.

**Signed on July 27, 2012**

                                                  **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**